UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| SHERRY A. MICHAEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:02-CV-321 |
| ) | (Phillips/Guyton) |
| WINDSOR GARDENS, LLC d/b/a ) | |
| WINDSOR GARDENS ASSISTED ) | |
| LIVING, D. BRIAN BARTLEY, and ) | |
| WINDSOR MANAGEMENT CORP., ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

This matter is before the undersigned pursuant to 28 U.S.C. § 636(b), the Rules of this Court, and by the Order [Doc. 318] of the Honorable Thomas W. Phillips, United States District Judge, for a report and recommendation on the Plaintiff's Motion for Attorneys' Fees [Doc. 254]. For the reasons set forth below, the undersigned **RECOMMENDS** that the Plaintiff Sherry Michael be awarded $333,243.00 in attorneys' fees and that the fee award be apportioned between the Defendants as follows: Defendant Bartley: twenty percent (20%) and the Windsor Defendants: eighty percent (80%).

I.      **BACKGROUND**

On June 14, 2002, the Plaintiff brought this action against the Defendants Windsor Gardens, LLC ("Windsor Gardens") and D. Brian Bartley ("Bartley") under 42 U.S.C. § 2000e ("Title VII"), the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, *et seq.* ("THRA"),

and Tennessee common law.[1] The Plaintiff alleged that she had been sexually harassed, and that she was terminated in retaliation for her complaint of sexual harassment and/or in retaliation for her refusal to participate in, or to remain silent regarding, certain illegalities perpetrated by the Defendants. The Plaintiff amended her complaint on January 23, 2004 to add another defendant, Windsor Management Corporation ("Windsor Management"), under a theory that Windsor Gardens and Windsor Management operated as an integrated or joint enterprise. [Doc. 56].

This case proceeded to a jury trial on July 19, 2004. Following a seven-day trial, the jury found in favor of the Plaintiff as to all claims and awarded her compensatory damages in the amount of $200,000.[2] The jury found that ten percent (10%) of the award was to be apportioned to Bartley personally, with the remainder (90%) apportioned to Windsor Management. [Doc. 242]. Further, the jury found that an award of punitive damages was appropriate and awarded the Plaintiff punitive damages in the amount of $50,000. [Doc. 244].

Following the return of these verdicts, the Plaintiff moved for an award of attorney's fees as a "prevailing party" under Title VII and the THRA. The Plaintiff initially sought an award in the amount of $355,515.00. [Doc. 254]. Plaintiff's initial request was based upon a hourly rate of $225.00 for "experienced attorneys" (*i.e.*, attorneys Dale Montpelier, Katherine Young, and Kevin Fox); $185.00 for "junior attorneys" (*i.e.*, attorney Link Gibbons); and $90.00 for law clerks and paralegals. In support of the fee petition, the Plaintiff submitted an 89-page invoice [Doc. 254

---

[1] The Plaintiff also brought a claim under the Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304 ("TPPA"); however, that claim was dismissed on summary judgment. [Doc. 167].

[2] The jury found that the Plaintiff was entitled to an award of $30,000 for back pay/lost benefits and $170,000 for mental/emotional injury.

2

Ex.A – filed under seal], the Affidavit of Dale Montpelier [Doc. 254 Ex. B], and the Affidavits of Cecilia Petersen, April C. Meldrum, and Thomas S. Scott, Jr., attorneys who practice employment law litigation in Knoxville, Tennessee. [Doc. 254 Exs. C, D, E]. In her motion, Plaintiff argues that each Defendant should be jointly and severally liable for the fee award or, in the alternative, that 50% of the award of attorneys' fees should be apportioned to Defendant Bartley with the remainder apportioned to the corporate Defendants.

The Defendants object to the amount of fees requested by the Plaintiff, arguing that (1) the hourly rate for both attorneys and paralegals is excessive; (2) the number of interoffice conferences between attorneys and paralegals is excessive; (3) tasks performed by different attorneys are "lumped" together under singular time sheet entries, making it impossible to determine the reasonableness of the time spent on each of the individual tasks; (4) there are numerous entries involving multiple attorneys reviewing and revising pleadings, letters, and other documents; (5) there are duplicated billings of numerous attorneys and staff; (6) multiple attorneys and staff participated in tasks that did not require the number of professionals involved; (7) excessive time was spent on a mock trial; (8) time was spent unnecessarily by paralegals when the task could have been performed by a secretary; and (9) numerous entries are vague. The Defendants object to the fee being apportioned equally between them; they contend that Defendant Bartley should be liable only for 10% of the fee award, in accordance with the jury's determination of his liability for the Plaintiff's damages. [Doc. 281].

On October 27, 2004, the District Court determined that attorneys Montpelier and Young are entitled to charge $200.00 per hour, that attorneys Fox and Gibbons are entitled to charge

3

$150.00 per hour, and that the law clerks and paralegals may charge $75.00 per hour. All other matters related to the request for fees was referred to the undersigned. [Doc. 318].

Plaintiff filed a supplement to her motion for fees [Doc. 319], to which a response was filed [Doc. 329], as well as a reply [Doc. 331] and sur-reply [Doc. 335]. Thereafter, on November 5, 2004, Defendant Windsor Gardens filed a notice of bankruptcy. [Doc. 328]. On December 8, 2004, the undersigned held that the motion for attorneys' fees would be held in abeyance pending the final determination by the Bankruptcy Court regarding the automatic stay. [Doc. 338]. On December 30, 2004, Plaintiff filed a Notice [Doc. 342], indicating that Plaintiff had received relief from the automatic stay for the purposes of the Court determining Plaintiff's award of attorneys' fees. Thereafter, Plaintiff filed a second supplement [Doc. 345], to which a response was filed [Doc. 350].

## II. ANALYSIS

### A. Calculation of the Lodestar Amount

Under Title VII, a district court has discretion to award the prevailing party "a reasonable attorney's fee." 42 U.S.C. § 2000e-5(k); White v. Burlington Northern & Santa Fe Railway Co., 364 F.3d 789, 804 (6th Cir. 2004). A prevailing plaintiff may also recover attorney's fees under the THRA. See Tenn. Code Ann. § 4-21-311(b).

"'The primary concern in an attorney fee case is that the fee awarded be reasonable,' that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." Adcock-Ladd v. Secretary of Treasury, 227 F.3d 343, 349 (6th Cir. 2000) (quoting Reed v. Rhodes, 179 F.3d 453, 471 (6th Cir. 1999)). In deciding what constitutes a reasonable fee, the Court begins with determining the "lodestar" amount, which is calculated by

4

multiplying the number of hours reasonably expended by a reasonable hourly rate. Hensley v. Eckhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939, 76 L. Ed. 2d 40 (1983). The District Court has already determined the reasonable hourly rates for attorneys Montpelier and Young ($200.00 per hour), for attorneys Fox and Gibbons ($150.00 per hour), and for law clerks and paralegals ($75.00 per hour). Accordingly, the only issue remaining for the undersigned with respect to the lodestar amount is the number of hours reasonably expended in the representation of the Plaintiff.

The Court may consider the following factors in calculating the basic lodestar fee[3]:

> (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Adcock-Ladd, 227 F.3d at 349 n.8 (quoting Reed, 179 F.3d at 471-72 n.3). One of the most important factors for the Court to consider is the result obtained. Id. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." Hensley, 461 U.S. at 435, 103 S. Ct. at 1940.

The lodestar method, however, "does not solve the problem of excessive hours." Coulter v. Tennessee, 805 F.2d 146, 150 (6th Cir. 1986). Thus, a Court, within its discretion, may reduce the total number of hours claimed if they are unreasonable. Anglo-Danish Fibre Indus., Ltd.

---

[3]Such factors may also be considered in adjusting the lodestar amount. None of the parties, however, seek such an adjustment, nor does the Court finds that such an adjustment would be appropriate in this case.

v. Columbian Rope Co., No. 01-2133-GV, 2003 WL 223082, at *3 (W.D. Tenn. Jan. 28, 2003). "The question is not whether a party prevailed on a particular motion, nor whether, in hindsight, the time expended was strictly necessary to obtain relief achieved; instead, the question is whether a reasonable attorney would believe the work to be reasonably expended in pursuit of success at the time when the work was performed." Id. The Plaintiff has the burden of demonstrating that the amount of hours claimed is reasonable. See Blum v. Stenson, 465 U.S. 886, 897, 104 S. Ct. 1541, 1548, 79 L. Ed. 2d 891 (1984).

  1. *Interoffice Conferences and Duplicative Billing*

Defendants object to more than 140 interoffice conferences which occurred during this litigation, including strategy meetings, discussions between attorneys, and discussions between attorneys and paralegals. Defendants argue that the number of such conferences is excessive and unreasonable. Defendants further object to numerous entries on the invoice involving multiple attorneys reviewing and revising pleadings, letters, and other documents. Plaintiff counters that the time spent in interoffice conferences and in reviewing and revising documents was necessary and reasonable in light of the complexity of the case.

The Court has carefully reviewed the invoice submitted by Plaintiff's counsel and finds that there is some duplicative billing by attorneys for multiple review and revision of letters, pleadings, and other documents prepared by other attorneys. Furthermore, the Court agrees with the Defendants that the number of interoffice conferences was excessive in this case. While Defendant specifically objected to approximately 140 of these conferences, the Court notes that the invoice submitted is replete with entries for time claimed for strategy meetings and discussions of the case between attorneys as well as between attorneys and paralegals. "Interoffice conferences

6

are the type of inefficiency and duplication of services that may occur in cases where more than one attorney is used." Anglo-Danish Fibre Industries, 2003 WL 223082, at *7 (quoting in part Schultz v. Amick, 955 F. Supp. 1087, 1115 (N.D. Iowa 1997)) (internal quotation marks omitted). In light of the numerous instances of duplicative billing by attorneys for the review and revision of documents by other attorneys, as well as the plethora of discussions and meetings among the attorneys and paralegals working on this case, the Court **RECOMMENDS** that the overall fee award be reduced by ten percent (10%). See Cleveland Area Board of Realtors v. City of Euclid, 965 F. Supp. 1017, 1022 (N.D. Ohio 1997) (deducting fee award for 10% for excessive and duplicative work); In re Olson, 884 F.2d 1415, 1429 (D.C. Cir. 1989) (reducing fee award by 10% for excessive number of IOC and strategy meetings).

   2.   *Failure to Itemize*

Defendants argue that Plaintiff's overall fee award should be reduced by at least 50% because the billing entries are not itemized by tasks or by the individuals who performed those tasks (with the exception of the period of time during trial). Because of this "lumping" of time, Defendants argue that it is impossible to determine the reasonableness of the time spent by each individual on each particular service or task.

The Supreme Court has stated that counsel "is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures." Hensley, 461 U.S. at 437 n.12, 103 S. Ct. at 1941 n.12. Although Plaintiff's counsel do not explicitly set forth how much time was spent on each individual task, the Court finds that the entries made by counsel were sufficient to identify the general subject matter

7

of their time expenditures. Accordingly, no deduction is warranted by counsel's "lumping" of time on a daily basis.

### 3. *Multiple Attorneys*

Defendants further object to multiple attorneys and staff participating in tasks when the circumstances did not require the participation of this number of professionals. Specifically, Defendants complain of a "squad of lawyers" appearing at every deposition, telephone conference, and hearing. They further object to the number of professionals who attended the seven-day trial.

With respect to these particular objections, the Court notes that this was complicated litigation which involved multiple professionals by both sides. The Court will not, therefore, question the participation of multiple attorneys and paralegals on behalf of the Plaintiff. "There is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292, 1302 (11th Cir. 1988). To the extent that the participation of multiple attorneys and paralegals resulted in duplicative effort, the Court has already addressed this issue in recommending the 10% reduction of fees for duplication of effort and excessive conferencing.

### 4. *Mock Trial*

Defendants also object to the amount of time spent on a mock trial. Defendants argue that Plaintiff's counsel spent approximately 55 hours on the mock trial, and that this amount of time is excessive and unreasonable given the nature of the litigation. They further object on the grounds that these time entries reflect multiple interoffice conferences. Defendants argue that the entire amount of fees associated with the mock trial should be stricken or, in the alternative, reduced by

at least 50%. Plaintiff, on the other hand, argues that this litigation was complex, involving multiple causes of action. She argues that the time spent on the mock trial was warranted, as is evidenced by the verdict she received.

The Court finds that the time claimed for the mock trial was reasonable and necessary. To the extent that these time entries reflect multiple interoffice conferences, the Court already has addressed this issue in recommending the 10% reduction for duplication of effort and excessive conferencing.

     *5.*     *Time Spent By Paralegals*

Defendants take issue with "charges for time spent by paralegals when the task could have been performed by a secretary, involves time in conference with counsel for which counsel also billed, or when the entry of description is so vague as to prevent defendant from determining whether the task (1) required the skill of a paralegal and/or (2) was even necessary." Defendants submit that the time spent by paralegals be reduced by at least 50% (to 203.6 hours) to account for inappropriate charges for clerical work, vague entries, interoffice conferences, duplication of tasks, and unnecessary tasks. Defendants specifically cite the time entries on the following dates as items which should be stricken or the amount of time claimed should be reduced: February 8, 2002 (.20 hours); June 13, 2002 (.40 hours); August 21, 2002 (.50 hours); September 19, 2002 (4.2 hours); October 25, 2002 (.10 hours); November 5, 2002 (.10 hours); January 13, 2003 (.10 hours); January 21, 2003 (.40 hours); December 15, 2003 .80 hours); December 24, 2003 (.80 hours); February 5, 2004 (.90 hours); April 15, 2004 (.50 hours); and April 22, 2004 (2.10 hours).

To the extent that the charges claimed by paralegals or law clerks contain duplicative billing and/or interoffice conferences, these objectionable practices have already been addressed by

9

the Court's recommendation of a 10% reduction in the overall fee award. In addition to this overall reduction, the Court finds that the following time entries, totaling 9.8 hours of paralegal time, are unduly vague and should be stricken:

    Thu June 13, 02    Time Entry    .40 hour (paralegal)
    (TAW) Participated in organizing material for lawsuit.

    Mon Aug 25, 03    Time Entry    .10 hour (paralegal)
    (TAW) Review memo from Attorney Montpelier.

    Thu Sep 19, 02    Time Entry    4.20 hours (paralegal)
    (TAW) Began review and organization of all case materials.

    Fri Sep 20, 02    Time Entry    1.80 hours (paralegal)
    (TAW) Completed review and organization of all case materials.

    Tue Oct 21, 03    Time Entry    .80 hour (paralegal)[4]
    (TAW) Discussion with the client.

    Wed Dec 24, 03    Time Entry    .80 hour (paralegal)
    (TAW) Assisted with preparing documents to be filed with the court.

    Mon Jan 12, 04    Time Entry    .10 hour (paralegal)[5]
    (TAW) Prepared documents for Attorney Montpelier.

    Tue Jan 20, 04    Time Entry    1.00 hour (paralegal)[6]
    (TAW) Prepare material for filing with the Court.

---

[4] This particular time entry contains time (a total of 1.70 hours) for two tasks performed by two paralegals. Due to the manner in which the Plaintiff lumped billing entries, the Court is unable to determine the precise amount of time claimed for the vague entry. Accordingly, the Court will strike the vague portion on a straight percentage basis, i.e., if two tasks are claimed and one is to be stricken, the entry will reduced by one-half. See, e.g., Anglo-Danish Fibre Industries, 2003 WL 223082, at *7 (striking vague portions of time entries on straight percentage basis).

[5] This entry contains time for two tasks, for a total of .20 hours. As only one portion of the entry is vague, the Court will deduct only .10 hour.

[6] This is a combined entry for two tasks, for a total of 2.10 hours. As only one portion of the entry is vague, the Court will deduct only 1.00 hour.

        Thu Mar 11, 04       Time Entry    .60 hour (paralegal)
        (EEB) Updated materials for use in case.

        TOTAL       9.80 HOURS

With respect to the Defendants' other objections regarding the time claimed by paralegals, the Court has reviewed these entries and finds them to be reasonable. For the reasons set forth above, it is **RECOMMENDED** that a total of $735.00 (9.8 hours of paralegal time x $75.00 per hour) be deducted from the fee award.

        6.     *Other Objections*

Defendants make several objections to specific individual time entries, arguing, for example, that excessive time was spent on particular tasks[7] or that particular tasks could have been performed by a paralegal or junior attorney (see entry of July 15, 2004). The Court has carefully reviewed these entries and finds no basis to further reduce the fee award.

    B.     Apportionment of Fees

Plaintiff contends that each defendant should be jointly and severally liable for the fee award or, in the alternative, that 50% of the award should be apportioned to Defendant Bartley and the remaining 50% should be apportioned to the corporate Defendants. Defendants argue, on the other hand, that Defendant Bartley should be liable only for 10% of the fee award, in accordance with the jury's determination of his liability for the Plaintiff's damages.

In apportioning fees, the Court should strive to make an equitable apportionment. "Mathematical precision is not realistic and, consequently, courts need not do more than make

---

[7]Defendants specifically object to the time entries made on the following days, arguing that the time claimed is excessive: October 15 and 16, 2001; June 19, 2002; December 27, 2002; October 9, 2003; November 3, 2003; November 6, 2003; December 11, 2003; May 10 and 11, 2004; and June 13, 2004.

reasonable estimates." <u>Avenue Grille, Inc. v. Rootstown Township</u>, No. 95-3936, 1997 WL 219740, at *3 (6th Cir. April 30, 1997). Consideration should be given to the parties' relative culpability, as well as "which party's efforts required a larger portion of the plaintiff's counsel time." <u>Id.</u> at *2; <u>see also</u> <u>Berry v. School District of City of Benton Harbor</u>, 703 F. Supp. 1277, 1286 (W.D. Mich. 1986) (relevant factors to determining apportionment are relative culpability; percentage of litigation time devoted against each defendant; and defendants' relative ability to pay).

In the present case, Defendant Bartley was the primary actor in the events leading to the Plaintiff's termination. He is the Chief Manager of Windsor Gardens and is responsible for the overall operation of the facility. He is also a majority owner of Windsor Gardens and the sole employee of Windsor Management, which he established to oversee certain aspects of Windsor Gardens' operations. As such, Bartley is ultimately responsible for the decisions regarding the operation of both corporate entities. Indeed, it was Bartley who made the decision to terminate the Plaintiff. For these reasons, the Court finds that it would be equitable to apportion twenty percent (20%) of Plaintiff's fees to Defendant Bartley individually.

## III. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED**[8] that Plaintiff's Motion for Attorneys' Fees [Doc. 254] be **GRANTED** and that the Plaintiff Sherry Michael be awarded fees as follows:

| | |
|---|---|
| Senior Attorneys (1,302.50 hours x $200.00) | $260,500.00 |
| Junior Attorneys (522.40 hours x $150.00) | 78,360.00 |
| Paralegals/Law Clerks (428.60-9.8 hours x $75.00) | 31,410.00 |
| Subtotal | $370,270.00 |
| 10% Reduction | (37,027.00) |
| **TOTAL** | $333,243.00 |

It is further **RECOMMENDED** that the fee award be apportioned between the Defendants as follows: Defendant Bartley: twenty percent (20%) and the Windsor Defendants: eighty percent (80%).

**ENTER:**

s/ H. Bruce Guyton
United States Magistrate Judge

---

[8] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).