**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE**

| | | |
|---|---|---|
| **SHERRY A. MICHAEL,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **3:02-cv-321** |
| | ) | |
| **WINDSOR GARDENS, LLC, d/b/a** | ) | |
| **WINDSOR GARDENS ASSISTED** | ) | |
| **LIVING, D. BRIAN BARTLEY, and** | ) | |
| **WINDSOR MANAGEMENT CORP.,** | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

Plaintiff has moved the court for an award of attorneys' fees [Doc. 254]. In a prior order, the undersigned referred certain aspects of plaintiff's attorneys' fee motion to United States Magistrate Judge H. Bruce Guyton for consideration. In a report and recommendation, the magistrate judge recommended that plaintiff be awarded $333,243 in attorneys' fees and that the fee award be apportioned between the defendants as follows: Defendant D. Brian Bartley (Bartley): twenty percent (20%) and the Windsor Defendants: eighty percent (80%) [Doc. 367]. Defendants have filed objections to the magistrate judge's report and recommendation [Doc. 375], to which plaintiff has responded [Doc. 376]. Upon a *de novo* review of the magistrate judge's conclusions, the undersigned finds that the objections of the defendants should be **OVERRULED** and the report and recommendation of the magistrate should be and is **ACCEPTED IN WHOLE**.

After a seven-day trial, the jury in this matter found in favor of the plaintiff on all her claims and awarded her compensatory damages in the amount of $200,000 ($30,000 for back pay/lost benefits and $170,000 for mental/emotional injury). The jury apportioned 10% of the award to defendant Bartley personally, with the remainder apportioned to Windsor Management. Additionally, the jury awarded punitive damages in the amount of $50,000.

The magistrate judge clearly reviewed all of the material presented by the parties. As noted by the magistrate judge, **"**this was complicated litigation which involved multiple professionals" on both sides and a case in which plaintiff's attorneys "should recover a fully compensatory fee." *See Hensley v. Eckhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940 (1983). After a thorough review, this court agrees with the percentage reduction of the fees as determined by the magistrate judge and the striking of certain paralegal time entries. Additionally, the court agrees with the magistrate judge that no further deductions are warranted for the "lumping" of time by plaintiff's counsel, participation of multiple attorneys and use of mock trial. Further, the court finds the magistrate judge's decision regarding apportionment of the fees among the defendants to be reasonable and proper. Accordingly, plaintiff's motion for attorneys' fees is **GRANTED AS MODIFIED**, with plaintiff hereby awarded attorneys' fees in the amount of $333,243.00 apportioned between the defendants as follows: Defendant Bartley 20% and Windsor Gardens/Windsor Management 80%.

Plaintiff has also moved the court to award front pay [Doc. 250]. Defendants have responded in opposition [Doc. 276]. Plaintiff has replied to defendants' response [Doc. 282]. Plaintiff has filed a supplemental brief regarding the front pay/reinstatement issue [Doc. 344], to which defendants have responded [Doc. 351]; plaintiff has replied to defendants' response [Doc. 362]. Additionally, defendants have filed a supplemental brief [Doc. 364].

## REINSTATEMENT

The remedial provision of Title VII of the Civil Rights Act of 1964 (Title VII) requires courts to fashion the most complete relief possible for victims of discriminatory employment decisions. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373 (1975). This includes reinstatement. 42 U.S.C. ¶ 2000e-5(g)(1). The court is also authorized to award equitable relief under the Tennessee Human Rights Act (THRA), Tenn. Code Ann. ¶ 4-21-311. Additionally, reinstatement is available for violations of common law retaliatory discharge. *Sasser v. Averitt Express, Inc.*, 839 S.W.2d 422, 433 (Tenn. App. 1992); *Coffey v. Fayette Tubular Products*, 929 S.W.2d 326, 331-32 (Tenn. 1996).

Reinstatement is the "presumptively favored equitable remedy" in discrimination cases. *See Roush v. KFC Nat'l Mgmt. Co.,* 10 F.3d 392, 398 (6th Cir. 1993). An award of front pay is generally considered only after determining that reinstatement is inappropriate. *See Suggs v. Servicemaster Educ. Food Mgmt.*, 72 F.3d 1228, 1234 (6th Cir. 1996). Even then, an award of front pay is not automatic. *See Roush*, 10 F.3d

3

at 398.  In *Hudson v. Reno*, 130 F.3d 1193 (6th Cir. 1997), the Sixth Circuit considered

the standard for reinstatement:

> Although reinstatement is "the presumptively favored equitable remedy ...
> [it] is not appropriate in every case, such as where the plaintiff has found
> other work, where reinstatement would require displacement of a non-
> culpable employee or where hostility would result."  *Roush, supra*, 10 F.3d
> at 398 (citations omitted); *See also Shore v. Federal Express Corp.*, 777
> F.2d 1155, 1159 (6th Cir. 1985) (reinstatement inappropriate where it
> results in displacement or where the hostility between the parties
> "precludes the possibility of a satisfactory employment relationship").
> Moreover, an employer's genuine dissatisfaction with an employee's job
> performance is another factor which weighs against reinstatement.
> *McKnight v. General Motors Corp.*, 973 F.2d 1366, 1370 (7th Cir. 1992),
> cert. denied, 507 U.S. 915, 113 S.Ct. 1270 (1993).  Nevertheless, [t]he
> basis upon which reinstatement ... may be denied must be more
> compelling than the personal preferences and distrusts which
> accompanied the initial discriminatory activity.  "It is not enough that
> reinstatement might have 'disturbing consequences,' that it might revive
> old antagonisms, or that it could 'breed difficult working conditions'
> because relief is not restricted to that which will be pleasing and free of
> irritation."  The district court, on such petition, is of course bound by the
> jury's decision of the issue of prior discrimination.  *Farber*, *supra*, 917 F.2d
> at 1396.

*Hudson v. Reno*, 130 F.3d 1193, 1202 (6th Cir. 1997) (citing *Roush v. KFC Nat'l Mgmt.*

*Co.*, 10 F.3d 392, 399 (6th Cir. 1993), cert. denied, 513 U.S. 808, 115 S.Ct. 56 (1994);

*Farber v. Massillon Board of Education*, 917 F.2d 1391, 1396 (6th Cir. 1990)).


Defendants argue that plaintiff has not "diligently attempted" to find alternative

work.  They assert that at her current PRN job as a nurse, plaintiff enjoys the flexibility

to work when and if she wants, which enables her to attend functions with her children

during the day and evening hours as well.  Defendants further claim that plaintiff is

compensated for the irregularity and lack of employee benefits in her PRN job by a

higher-than-average hourly rate.  Thus, according to defendants, by working PRN as a

4

nurse, plaintiff was able to make over $60,000 during the years 2002 and 2003, more than the $48,000 she was earning at Windsor Gardens.

Plaintiff notes that the relevant question is whether plaintiff has found "comparable" or "substantially equivalent" work. *U.S. v. City of Warren, Mich.*, 138 F.3d 1083, 1098 (6th Cir. 1998); *Fite v. First Tennessee Prod. Credit Assoc.*, 861 F.2d 884, 893 (6th Cir. 1988). Plaintiff's work at Windsor Gardens was as the Administrator, not as a nurse. Plaintiff asserts that she has diligently attempted to find work, but has been unable to secure a regular full-time job as an administrator. She states that it is not easy to find a job which provides the hours, proximity to home, and flexibility which plaintiff enjoyed at Windsor Gardens. Indeed, the testimony from the trial was that Bartley promised plaintiff a job with flexible day-shift hours and benefits.

Plaintiff claims that reinstating her to her former position of Administrator at Windsor Gardens would not displace a non-culpable employee, as Bartley testified that he now holds that position, having taken it over when he terminated plaintiff's employment. The jury expressly found that Bartley was a culpable actor, who aided and abetted in the unlawful discriminatory conduct.

Plaintiff indicates one area where hostility could exist relates to the presence of Richard Cate (Cate), the sexual harasser, at the facility. However, the trial witnesses and the pleadings of the defendants have indicated that he is not a manager or officer but only a minority owner with no day-to-day role at Windsor Gardens. Therefore,

5

plaintiff claims Cate should not preclude the possibility of her reinstatement.  As for Bartley, plaintiff notes he would be replaced as the Administrator by the plaintiff upon her reinstatement.  Significantly, Bartley has recently testified at the ¶ 341 bankruptcy hearing for Windsor Gardens that the management contract between Windsor Gardens and his employer, Windsor Management Corporation, was terminated as of November 2004.  Accordingly, Windsor Management Corporation no longer controls the employment or management aspects of Windsor Gardens.  While defendants assert that Bartley continues to be the Chief Manager of Windsor Gardens and the majority owner and would, therefore, be required to monitor the Administrator's performance, plaintiff opines that the Bankruptcy Court may appoint a Trustee in this Chapter 11 case, as the facts and circumstances suggest that a neutral person should replace the debtor-in-possession.  If this occurs, there would be no need for Bartley to come to the facility as the Chief Manager.  If a Trustee is not appointed to handle the facility, plaintiff claims there would be no problem with her reinstatement if Bartley would allow her to do her job and refrain from further acts of illegal retaliation.

Plaintiff claims there was no credible evidence at trial of poor job performance. Plaintiff notes the jury concluded that her employment was ended because of the violations of law by the defendants.  She states it is significant that the trial testimony revealed Bartley had given the plaintiff a significant raise weeks before he fired her, which plaintiff testified was a merit raise.  Plaintiff argues that the raise is tantamount to an admission by Bailey that he was satisfied with the plaintiff's job performance.

6

Defendants, however, argue that Bartley was dissatisfied with plaintiff's performance, as were her co-workers. They assert that plaintiff does not understand that an administrator's management style is a part of job performance. Defendants claim that if plaintiff is reinstated, she will resume the same, poor management style she inflicted upon the employees before her termination, creating disharmony and discord among the Windsor Gardens' staff. According to defendants, certain employees are fearful of retaliation from the plaintiff and would fear for their jobs if she is reinstated.

The appropriateness of reinstatement and front pay, as equitable remedies, are within the discretion of the district court. *Taylor v. Invacare Corporation*, 64 Fed. Appx. 516 (6th Cir. 2003) (parties agreed reinstatement not appropriate and court denied front pay) citing *Schwartz v. Gregori*, 45 F.3d 1017 (6th Cir. 1995). Considering the extended and vexatious nature of the litigation that has occurred in this case, the atmosphere at Windsor Gardens seems hopelessly poisoned against the plaintiff. Regardless of the directives of the court, without the removal of certain staff, it would appear improbable that plaintiff would ever be given a fair chance to successfully perform in the role of Administrator. Thus, it seems unrealistic to expect that plaintiff could go back to work at Windsor Gardens without some future difficulty. *See Toth v. American Greetings Corp.*, 811 F.2d 608 (6th Cir. 1986) (Title VII case where court denied reinstatement because of perception that the antagonism between the parties would only result in renewal of problems). Because the welfare of the residents at the health care facility must be a primary consideration, the court does not find reinstatement to be a reasonable option.

7

**FRONT PAY**

In this case, plaintiff recovered under Title VII, the THRA, and the Tennessee common law of retaliatory discharge. All provide for front pay if reinstatement is not feasible. *See Griffin v. Michigan Dept. of Corrections*, 5 F.3d 186, 189 (6th Cir. 1993); *Coffey v. Fayette Tubular Products*, 929 S.W.2d 326, 331-32 (Tenn. 1996). However, even when reinstatement is inappropriate, an award of front pay is not automatic. *Carberry v. Monarch Marketing Systems, Inc.*, 30 Fed. Appx. 389 (6th Cir. 2002).

Front pay is prospective compensation – loss of future earnings – awarded to the employee to put him or her in the financial position he or she would have attained over time but for the employer's wrongful firing. It is an equitable remedy. *Sasser v. Averitt Express*, *Inc.*, 839 S.W.2d at 433, 435. An award of front pay is designed to make a wrongfully discharged employee whole. *Coffey*, 929 S.W.2d at 332; *see Shore v. Federal Exp. Corp.*, 42 F.3d 373 (6th Cir. 1994) (*Shore II*) and *Shore v. Federal Exp. Corp.*, 777 F.2d 1155 (6th Cir. 1985) (*Shore I*); *Sasser*, 839 S.W.2d at 433-34. Front pay is not intended to be punitive ( *Hansard v. Pepsi Cola Metro. Bottling Co.*, 865 F.2d 1461, 1469 (5th Cir. 1989)); nor should the courts undertake to tie an award of front pay to any accompanying punitive damage award. *Coffey*, 929 S.W.2d at 333.

As to front pay under the THRA, entitlement is determined in light of four factors:

(1) the employee's future in his or her old job [meaning an estimation of what the employee could have earned in the old job if the discharge had not taken place]; (2) the employee's work and life expectancy; (3) the employee's obligation to mitigate his or her damages; (4) the availability of comparable employment opportunities and the time reasonably required to find another job.

8

*Coffey*, 929 S.W.2d at 332 (citing *Sasser*, 839 S.W.2d at 434). The Sixth Circuit has offered a similar interpretation of front pay under Title VII. *Shore II*, 42 F.3d at 378. In *Roush v. KFC Nat'l Mgmt. Co.*, 10 F.3d 392 (1993), the Sixth Circuit reviewed the following factors which must be considered in determining whether an award of front pay is appropriate: "an employee's duty to mitigate, the availability of employment opportunities, the period within which one by reasonable efforts may be re-employed, the employee's work and life expectancy, the discount tables to determine the present value of future damages and other factors that are pertinent on prospective damages awards." *Roush*, 10 F.3d at 399, quoting *Shore*, 777 F.2d 1155, 1160 (6th Cir. 1985). As noted in *Frye v. The Memphis State University*, 806 S.W.2d 170, 173 (Tenn. 1991), damages for front pay are derived from "the difference" between what the employee would have earned had she not been dismissed, less what she could have earned doing something else by exercise of reasonable diligence. "Reasonable diligence" means mitigation through seeking other employment "of a similar or comparable nature." *Id.* "The burden is on the employer to establish that the employee failed to exercise reasonable diligence in mitigating damages." *Id.* The employer must "establish that equivalent positions are available with 'virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status.'" *Id.* (quoting *Rasimas v. Michigan Dept. of Mental Health*, 714 F.2d 614, 624 (6th Cir. 1983), cert. denied, 466 U.S. 950, 104 S.Ct. 2151 (1984)). In doing so, the plaintiff's individual characteristics and the local job market must be considered. *Id.*

9

Defendants assert plaintiff's front pay request should be denied, as they claim the decision as to the propriety of a front pay award must be made by the court prior to submission of the case to the jury. *Roush v. KFC Nat'l Mgmt.*, 10 F.3d 392, 398 (6th Cir. 1993). In *Roush*, the Sixth Circuit noted as follows:

> The district court's determination of whether an award of front pay is appropriate, and its articulation of the reasons why such an award is or is not appropriate, must ordinarily precede its submission of the case to the jury.... because the jury must be instructed on what factors to consider in determining the amount of front pay, assuming that the court finds such an award is in order.

*Roush*, 10 F.3d 392, 398. Therefore, defendants contend that only the jury, not the court, can award front pay. Accordingly, defendants assert that plaintiff's request for front pay is untimely.

Plaintiff notes that in this case, the jury found that the defendants violated the Tennessee common law of retaliatory discharge, as well as Title VII. Under the state law, the court, and not the jury, determines whether front pay is appropriate and also calculates the amount of front pay to be awarded. *Sasser,* 839 S.W.2d at 435. As stated by the Tennessee Court of Appeals in *Sasser*:

> The choice between reinstatement and front pay is not a question of fact but rather a choice between remedies. Choosing the remedy which, under the facts of a particular case, is more likely to make an employee whole without awarding a windfall is particularly within the province of the court. When other forms of equitable relief are not feasible, damages are appropriate. Determining the amount of front pay damages requires the calm and deliberate balancing of many factors. It is sufficiently intricate and complex that it requires a decision by the court rather than submission to the jury. .... [T]he trial court should decide whether Mr. Sasser is entitled to front pay and, if so, the amount.

*Sasser*, 839 S.W.2d at 435-36.  *Accord Coffey*, 929 S.W.2d 326 (Tenn.  1996).


Plaintiff further argues that the pretrial order, agreed to by the plaintiff and the defendants, clearly disclosed that an award of front pay was sought by the plaintiff in this case and that the matter was reserved to the trial judge.  Plaintiff claims she saw no need for a jury instruction on the issue because it was reserved for the judge.  She further asserts that since the jury was not being asked to determine front pay, the jury did not need to know anything about the concept of front pay.  Plaintiff notes the pretrial order stated as follows:

## IV.  **ISSUES TO BE SUBMITTED TO THE JUDGE**

Plaintiff has outlined the following issues that she believes are to be submitted to the trial judge for determination.  Plaintiff disagrees with the issues submitted by the Defendants.

* * *

8.  If reinstatement is not feasible or possible, is the Plaintiff entitled to front pay and in what amount?

* * *

Defendants have outlined the following issues that they believe are to be submitted to the trial judge for determination.  Defendants disagree with the issues submitted by the Plaintiff and disagree that issues not presented in this Pre-Trial Order are waived.

* * *

2.  Whether plaintiff has any claim for back pay or front pay based on the fact that she has earned more money since leaving Windsor Gardens than she earned while employed by Windsor Gardens?


The court finds that it can make an award front pay in this case, if such an award

is appropriate, because plaintiff has prevailed on her state law claims that, under state law, reserve the issue of front pay for the trial judge.  Additionally, the court finds that because defendants did not object to the fact that the jury instructions did not include guidance on awarding front pay, did not object that the court did not make a specific determination as to "reinstatement versus front pay" prior to submitting the case to the jury, and did not object that the verdict form lacked a provision for front pay to be determined by the jury instead of the court, these alleged errors are waived.

Defendants also claim that the jury needed to know that the court would be determining front pay.  They note there was no mention of front pay in the jury instructions, nor was there any indication that plaintiff would be awarded an additional amount, so that, without knowing that additional monies might be awarded as "front pay," the jury arguably included this concept in the award of $170,000 for, *inter alia*, "lost earning capacity."  According to defendants, due to the omission, the jury instructions and jury verdict form were "misleading."

Plaintiff responds that "lost earning capacity" is not synonymous with an award of front pay.  The purpose of front pay is as follows:

> [F]ront pay is intended to assist in making a discharged employee whole by complementing a back pay award.  While back pay is intended to provide an award for injuries occurring prior to trial, front pay is an award for future injury that may occur after trial.  It is, simply, an award of prospective damages for the loss of future earnings.

*Sasser*, 839 S.W.2d at 433 (citing *Hansard v. Pepsi-Cola Metro. Bottling Co.*, 865 F.2d 1461, 1469 (5th Cir. 1989), *Davis v. Combustion Eng'g, Inc.*, 742 F.2d 916, 922 (6th Cir.

12

1984); *Coffey*, 929 S.W.2d at 332. "It is intended to replace the future income the employee would have earned with the company had his or her employment not been cut short by the wrongful termination" *Lowrimore v. Certified Industries, Inc.*, 2001 WL 812259 (Tenn. App. 2001) at p. 3. "Front pay is therefore simply compensation for the post-judgment effects of past discrimination." *Shore*, 777 F.2d at 1158.

In contrast, the court's jury instructions used in this case define lost earning capacity as: "the value of the ability to earn money that has been lost in the past." Plaintiff argues that being fired from a management position and having to work as an on-call nurse have permanently lowered the plaintiff's ability to earn. She claims this was a tremendous set-back in her career, which will affect her ability to earn for the rest of her working life. Plaintiff notes that aspect of damages has been compensated by the jury in its verdict. The issue of front pay, however, was not addressed by (or even presented to) the jury, and remains for the court to decide.

The court finds that plaintiff clearly asked for front pay in the pretrial order. Significantly, defendants did not object to the fact that the court's jury instructions did not include specific guidance on awarding front pay, did not object to the fact that the court did not make a specific determination as to "reinstatement versus front pay" prior to submitting the case to the jury, and did not object that the verdict form needed to include a specific provision for "front pay" to be determined by the jury instead of the court. Thus, the court finds defendants waived their right to complain by not asking for a jury instruction on the issue, or asking for a line in the jury verdict form. The court

13

further finds that the jury instructions were not misleading to the jury, as the determination of plaintiff's entitlement to front pay at a later time had no bearing on the jury's decision about plaintiff's other damages.

Defendants further claim that plaintiff has failed to establish that she is entitled to front pay because there is no evidence to support an allegation that plaintiff has lost earnings since her termination from Windsor Gardens. Defendants argue that the evidence shows that the plaintiff's Children's Hospital hourly rate was effectively over $30.00.

Plaintiff responds that the jury found she has mitigated her damages yet remains underemployed. As plaintiff testified at trial, she has attempted to locate full-time regular employment, and she continues to do so; she has only been able to work part-time and that her hours vary; and that she is working as a PRN nurse at Children's Hospital. Plaintiff contends she is losing money that she would have been earning had she remained employed at Windsor Gardens as the Administrator. In support of her argument, plaintiff relies on the report of her expert, Dr. John Moore; defendants stipulated to his credentials and qualifications at trial. Plaintiff asserts that defendants' calculations do not take into account the effective hourly wage and do not take into account the fact that plaintiff had benefits at Windsor Gardens, but that she has no benefits as a part-time PRN nurse at Children's Hospital.

The court finds that plaintiff's motion for front pay should be **GRANTED AS**

14

**MODIFIED**.  The court has reviewed the report of Dr.  Moore and agrees with his conclusions.  However, as this court must estimate what plaintiff's remaining tenure would have been with Windsor Gardens, the undersigned has reduced the front pay award by one year to four years in the amount of $62,503.  Additionally, the front pay award, like the attorneys' fees award, is apportioned between the defendants as follows: Defendant Bartley: twenty percent (20%) and the Windsor Defendants: eighty percent (80%)

As to plaintiff's motion for reconsideration of the court's order of November 4, 2004 [Doc.  330], the motion is **DENIED**.  Defendants' motion to file a supplemental brief [Doc.  363] is **GRANTED**; the attached brief now formally filed has been considered by the court..  Plaintiff's motion to strike affidavits from the record [Doc.  365] is **DENIED**.

**IT IS SO ORDERED.**

ENTER:


_____s/Thomas W.  Phillips_____
**UNITED STATES DISTRICT JUDGE**